**SIMS v. FALVEY et al.**
No. 4667.

Court of Civil Appeals of Texas. Beaumont.
June 22, 1950.

Rehearing Granted in Part Oct. 26, 1950.

Second Motion for Rehearing Overruled
Dec. 6, 1950.

Henry H. Brooks, and Black & Stayton, all of Austin, for appellant.

Pitts & Liles, Conroe, Fulbright, Crooker, Freeman & Bates, Houston, for appellees.

R. L. MURRAY, Justice.

This suit was originally brought in the District Court of Montgomery County by Mrs. Dickson Falvey against Mrs. Ruby E. Falvey, individually and as independent executrix of the estate of her deceased husband, Thos. S. Falvey, and as trustee, W. A. Evans as independent executor of the estate of Thos. S. Falvey, deceased, Paul Falvey also as independent executor of such estate, Tom Seymour Falvey, Jr., Olive Seymour Falvey and Sue Falvey Sims, a feme sole. This suit was filed in June, 1948, and thereafter in August, 1948 the original plaintiff, Mrs. Dickson Falvey,

died and Sue Falvey Sims, a feme sole, daughter and only surviving heir of Mrs. Dickson Falvey substituted herself as plaintiff in suit and made as defendants, Mrs. Ruby E. Falvey, individually and as independent executrix of Thos. S. Falvey, deceased, and as trustee; Tom Seymour Falvey, Jr., a minor; Olive Seymour Falvey, a feme sole; and Houston Bank & Trust Company as executor and trustee of the will and estate of Thos. S. Falvey, deceased. The suit was founded upon the breach of a written property settlement agreement made in contemplation of a divorce between Dr. Thos. S. Falvey and his first wife, Mrs. Dickson Falvey, on August 1, 1919. The suit was brought primarily to recover an undivided one-half interest in certain property that had been acquired by Thos. S. Falvey, deceased, in his lifetime and in the alternative to recover certain sums of money due under the property settlement agreement. At the conclusion of the testimony both plaintiff and all defendants moved the court for an instructed verdict. The court discharged the jury, however, and entered judgment denying the plaintiff Sue Falvey Sims any recovery under her principal cause of action and rendered judgment in her favor against Mrs. Ruby E. Falvey and Houston Bank & Trust Company as independent executrix and executor of the estate, for the sum of $1,592.48. Mrs. Sue Falvey Sims, the plaintiff in the trial court, has duly perfected her appeal to this court for review of such judgment.

Dr. Thos. S. Falvey and Mrs. Dickson Falvey, the original plaintiff in this suit, were married in 1900 and were divorced in September, 1919. On the day following the date of the divorce Dr. Falvey married Mrs. Ruby E. Falvey and their marriage continued until March 16, 1948, the date of Dr. Falvey's death. Mrs. Sue Falvey Sims, the plaintiff in the trial below and the appellant here, was the only daughter of the first marriage and Thomas Seymour Falvey, Jr., a minor, and Olive Seymour Falvey are the only two children of the second marriage. During the existence of Dr. Falvey's second marriage he and his second wife accumulated a large community estate. The parties stipulated that all of the property in possession of Dr. Falvey and all the property which was conveyed by the two trust agreements which Dr. Falvey and Mrs. Ruby E. Falvey executed for the benefit of their two children was acquired on dates subsequent to the date of their marriage.

The appellant sought by her principal cause of action to recover an undivided one-half interest in all property claimed by Dr. Thos. S. Falvey and his second wife, Ruby E. Falvey, as community property and also sought to recover an undivided one-half interest in the two trust funds created by Dr. Falvey and Ruby E. Falvey for the benefit of their two children. This principal recovery was sought upon the theory that Dr. Falvey breached the property settlement agreement made with his first wife, Mrs. Dickson Falvey; that under the terms of this agreement this breach gave her the option of terminating the agreement and recovering her one half interest in the community property which he had acquired under it, in trust, and conditioned upon his full performance of such contract; that Dr. Falvey had inextricably commingled the community property of the first marriage which he acquired under the settlement agreement with the community property of the second marriage, and the trust funds were created out of the commingled estates; and that by reason of such commingling the defendants below had the burden upon the trial of separating the commingled property and identifying any part thereof that they might be entitled to retain, and that such defendants had wholly failed to discharge this burden.

On August 13, 1919, in contemplation of a divorce thereafter to be secured, Mrs. Dickson Falvey and Dr. Thos. S. Falvey executed the following contract, which is the basis of this lawsuit:

"The State of Texas

"County of Harris

"Know All Men By These Presents: that this agreement made between Thos. S. Falvey of Harris County, Texas, and Mrs.

Dickson Falvey, of Travis County, Texas, recites—

"1. That the parties hereto are husband and wife; that they have permanently separated, and that they desire by this written contract to definitely settle and define their respective rights in their community estate, it being contemplated by each of them that a decree of divorce will be entered dissolving the marriage relation at present existing between them.

"2. For the purposes and considerations above mentioned, the undersigned Thos. S. Falvey hereby promises, obligates, and binds himself to the undersigned Mrs. Dickson Falvey to pay her at Austin, Texas, for her support and maintenance during the remainder of her life time the sum of $350.00 per month, to be paid not later than the 5th day of each month, beginning with the month of September, 1919.

"3. Thos. S. Falvey further promises, binds, and obligates himself to pay as they accrue all city, county and state taxes on the San Benito property hereinafter mentioned and to pay for all repairs of the improvements on said property necessary to keep said improvements in good condition, and to pay as they accrue all insurance premiums necessary to keep said improvements insured against loss by fire for the full extent of their insurable value, and to deliver to Mrs. Dickson Falvey at Austin, Texas, from time to time such tax receipts and fire insurance policies as may be necessary to show that the provisions herein with reference to fire insurance and payment of taxes are being fully complied with.

"4. Thos. S. Falvey has conveyed to Mrs. Dickson Falvey for her sole and separate use and benefit and as part of her separate estate property as follows:

"(1) The east one-half of Block No. 26 in the town of San Benito, Cameron County, Texas, as per map of said town by S. A. Robertson, Civil Engineer, of record in the office of the County Clerk of Cameron County, Texas, except a parcel of land out of the southeast corner of said half block fronting 30 feet on Sam Houston Avenue and extending back between parallel lines, a distance of 50 feet, along Batts Street, which excepted portion of said half block is occupied by the brick building house of the Farmers State Guaranty Bank.

"(2) The south one-half of Lot No. 6 and all of Lot No. 7 in Block No. 175 in the town of Jacksonville, Cherokee County, Texas, as per map of said town recorded in Book A-2, page 559, Deed Records of said county; also the following described lot in said town of Jacksonville, which is not numbered but is described by metes and bounds as follows, viz.: Beginning on the east boundary line of Ragsdale Street, the S.W. corner of Lot No. 7, Block No. 175; thence south 23½ feet east with said street 56½ feet to the northwest corner of a lot owned by Dickson A. Falvey; thence east with the north boundary line of said Dickson A. Falvey lot 125 feet to the northeast corner of same; thence west with the south boundary line of Lot No. 7 in Block No. 175, a distance of 136½ feet to the place of beginning, being the same lot conveyed to H. D. Davies by C. S. Belton and and wife by deed dated April 1, 1887.

"5. It is agreed that Thos. S.Falvey so long as he complies with the obligations which he has undertaken to perform under the terms of this contract shall have the exclusive right to rent, manage, and control the above mentioned San Benito properties of Mrs. Dickson Falvey, and the right to collect all the rents and revenues therefrom, but it is stipulated in this connection that if Thos. S. Falvey should at any time fail to pay when due the allowance, taxes, insurance, or repair bills herein mentioned, or fail to perform when due any other obligation by him herein undertaken, then the powers herein granted him over said San Benito property and all contracts made by him for the rental or lease thereof shall at once, at the option of Mrs. Dickson Falvey, cease and terminate.

"6. Thos. S. Falvey, in consideration of the premises, further promises, binds, and obligates himself to erect for Mrs. Dickson Falvey at his own expense and within a reasonable time on a lot or lots to be selected and purchased by her in the city of Austin, Texas, a residence in ac-

cordance with a plan and design to be approved by her to cost not less then six (in ink) ten—thousand dollars.

"7. Thos. S. Falvey has transferred and assigned and hereby transfers and assigns to Mrs. Dickson Falvey life insurance policies on his life as follows:

"(1) No. 31,353 issued by Guarantee Fund Life Association of Omaha, Neb., under date December 31, 1913, for $6,000;

"(2) No. 31354 issued by Guarantee Fund Life Association of Omaha, Neb., under date December 31, 1913, for $4,000;

"(3) Beneficiary Certificate No. 129, 541 of the Woodmen of the World, dated Nov. 20, 1905, for $3,000;

"(4) No. 276,768 issued by Union Central Life Insurance Company of Cincinnati, Ohio, under date March 13, 1904, for $5.000.

"It is in this connection, however, recited that $1,000 of the Woodmen of the World beneficiary certificate above mentioned is payable to Miss Sue Falvey, and said portion of said certificate is not by these presents transferred. It is further recited that $1,000 of said beneficiary certificate is payable to Mrs. A. M. Falvey, but Thos. S. Falvey obligates himself to make said portion of said certificate payable to Mrs. Dickson Falvey, and undertakes to take such steps as may be necessary to have said portion of said certificate transferred on the books of the Woodmen of the World to Mrs. Dickson Falvey as beneficiary. It is further recited that $3,000 of the above mentioned policy of the Union Central Life Insurance Company is payable to Miss Sue Falvey, and said portion of said policy is not by these presents transferred.

"Thos. S. Falvey by these presents binds and obligates himself to pay as and when due all premiums, assessments, and other demands necessary to keep in force all of the above mentioned life insurance of Mrs. Dickson Falvey, and to promptly deliver to her at Austin, Texas, such receipts from time to time as will show that this provision of this contract has been complied with.

"In consideration of the promises and obligations herein undertaken to be performed by Thos. S. Falvey, Mrs. Dickson Falvey hereby releases and quitclaims unto Thos. S. Falvey all property belonging to the community estate of herself and Thos. S. Falvey, real, person, or mixed, except such property as is herein designated as her property; but it is distinctly stipulated and provided as a condition of this release and transfer to Thos. S. Falvey that he shall punctually perform, when due, each, all and every obligation by him assumed under the terms of this contract, and that Mrs. Dickson Falvey may, at her option, declare this contract void and terminated if Thos. S. Falvey should at any time breach said obligations of any part thereof.

"Witness the hands of the parties this 13th day of August, A.D. 1919.

"(s) Thos. S. Falvey
"(s) Mrs. Dickson Falvey"

About a month before the above contract was signed, Dr. Falvey had conveyed to Mrs. Dickson Falvey the property referred to in the contract as the San Benito property. Under the contract Dr. Falvey was to receive all the income from this property, on which was situated a hotel. This property was later sold by Mrs. Falvey and from the evidence it is apparent that Dr. Falvey consented to such sale and assisted in the details of the consummation of the sale. The money received from the sale was invested by Mrs. Dickson Falvey. At first this arrangement seemed to be satisfactory with Dr. Falvey but at a later date he showed himself to be dissatisfied because he had not received the income from the investment of the money received from the sale. For approximately 18 years before the suit was filed Dr. Falvey did not pay the $350 per month which he undertook to do in the marriage settlement agreement. He sent her $100 per month instead of the $350, beginning some time in 1929. These $100 per month payments ceased in December, 1947, and it is for the period of time from that date until the death of Mrs. Dickson Falvey in August, 1948, that the trial court allowed recovery of $100 per month against the executrix and the executors of Dr. Falvey's will and estate. The balance of the sum

awarded to the appellant in the judgment of the trial court represented the value of a policy loan and the amount of unpaid premiums due on a life insurance policy of Dr. Falvey.

There is no evidence in the record tracing any of the community property of Dr. Falvey's first marriage into any specific property belonging to the community estate of Dr. Falvey's second marriage. The appellant contends that this fact is sufficient to make it incumbent upon the trial court and upon this court upon appeal to enter judgment in her behalf against all of the appellees for an undivided one-half interest in all community property of the second marriage. She contends that since the burden was upon Dr. Falvey to maintain records and accounts from which such property might be identified and traced and no such records were kept and no such evidence was produced by the appellees, then all of the property of the second marriage is impressed with a trust for the benefit of Mrs. Dickson Falvey, the first wife and appellant here who, as her only heir, is substituted as plaintiff. She relies upon the case of Eaton v. Husted, 141 Tex. 349, 172 S.W.2d 493, by the Commission of Appeals, the opinion in which case was adopted by the Supreme Court.

Appellees with equal vigor declare that this same fact is sufficient to require the trial court to enter judgment in their favor, denying the appellant any relief under her principal cause of action and likewise requires an affirmance by this court of such a judgment. They rely upon the case of Logan v. Logan, 138 Tex. 40, 156 S.W.2d 507.

Introduced in evidence on trial were a great many letters from Dr. Falvey to his daughter, from which it is evident that Dr. Falvey engaged in many different types of business transactions. He was a physician and surgeon by profession and was a partner in the operation of the hospital, he also was engaged in the hotel business, oil business, banking business, lumber business and bought and sold land at different times. There were also letters in evidence passed between Mrs. Dickson Falvey, the original plaintiff, and Dr. Falvey. From the evidence we are satisfied that the commingling of funds and property by Dr. Falvey, which he took under the contract, with the community funds and property accumulated by him and his second wife was not a wrongful commingling of funds and property. The entire course of his dealings in the handling of the property seems to have been that which was contemplated by both parties to the contract when Mrs. Dickson Falvey agreed by the contract to convey and did convey to him all of her interest in their community property, and Dr. Falvey agreed, among other things, to pay her $350 per month for the balance of her life. In all the correspondence between them, as shown by the evidence, there is no hint or intimation on the part of Mrs. Dickson Falvey that she had any complaint to make in regard to such method of handling and commingling of the property and funds by Dr. Falvey, but such correspondence evidences complete agreement and acquiescence in such method of handling the community property and funds by Dr. Falvey. The commingling of funds and property by Dr. Falvey therefore was not a wrongful commingling under the principle of law announced in Chief Justice Alexander's opinion in the case of Logan v. Logan, supra. In this case, since the commingling was done rightfully and with the consent of Mrs. Dickson Falvey, no presumption is raised that the entire community estate of Dr. Falvey and Mrs. Ruby Falvey is subject to a trust for the benefit of Mrs. Dickson Falvey and her daughter, plaintiff here, and consequently the burden was on the plaintiff below, appellant here, to trace any funds or property of the community estate received by Dr Falvey under the separation contract into some specific property accumulated by Dr. Falvey and Mrs. Ruby Falvey. We believe the facts of this case bring it squarely within the rule announced in Logan v. Logan, supra, and not by the case of Eaton v. Husted, supra. It follows, therefore, that since the appellant wholly failed to discharge her burden of proof in tracing the community property of the first marriage

into the community property of the second marriage, the trial court was correct in denying the appellant any recovery on her principal cause of action.

By her alternative cause of action, the appellant sought to recover the $350 monthly payments due under the contract during the period beginning 4 years prior to the institution of the suit and ending at the time of Mrs. Dickson Falvey's death in 1948, less credit for the payments of $100 per month made by Dr. Falvey to Mrs. Dickson Falvey through November, 1947, plus approximately $3,700 which Mrs. Dickson Falvey claimed she would have received under the contract but for Dr. Falvey's default in failing to keep such insurance in force as he agreed. This action of the trial court is assailed by the appellant under her Point No. 2. In her brief and reply briefs the matter of receiving the sum of money which she would have received from insurance is not briefed and we consider it waived. As to the $350 monthly payments due under the contract, however, it is noted that the only defenses urged by the appellees to her cause of action were that (1) Mrs. Dickson Falvey had breached the original contract by selling the San Benito hotel property and retaining the proceeds of the sale and thereby excused the appellees from further performance; (2) the 2 and 4 years statutes of limitation; (3) Mrs. Dickson Falvey released Dr. Falvey from the marriage settlement contract and said contract was abondoned by both parties. From the various letters and other matters in evidence, it is evident that Dr. Falvey assisted in making both sales of the San Benito hotel property. The property was first sold to a Mr. Robards in 1920, and it was repossessed for failure to make the agreed preferred payments, and in 1925 Mrs. Dickson Falvey again conveyed the property to F. B. Sublett, et al. Dr. Falvey took an active part in all the negotiations leading to the consummation of both sales and continued to make the $350 per month payments thereafter until 1929. This transaction, we are satisfied, could in no way be considered as a breach of the marriage settlement contract by Mrs. Dickson Falvey so as to release Dr. Falvey from its terms. He did not so regard it as is shown by his continuing to make payments until the year of 1929.

We are also satisfied that the evidence does not show as a matter of law, that Mrs. Dickson Falvey released Dr. Falvey from the marriage settlement contract or that said contract was abandoned by both parties. It is clear from the letters which she wrote to him during her lifetime that she felt herself physically unable to begin and carry on litigation over the contract, but that she still regarded the $350 monthly payments as due and owing her, although she accepted the $100 monthly payments from Dr. Falvey. Occasionally in such letters there appears the reminder that consequences of a lawsuit over this contract could be surprising and serious. In one letter dated March 4, 1946, Mrs. Dickson Falvey wrote that "I do know that when you ceased to make the payments to me that my right to community property claim was immediately revived". The appellees maintain that such a statement by her fixed the date when limitation began to run against her claim as the date when Dr. Falvey ceased to make the $350 payments in 1929. We do not so regard it. Under the authority of Matlock v. Gulf C. & S. F. Ry. Company, Tex.Civ.App., 70 S.W.2d 279, and cases cited, we believe that the rule is settled in this state that a cause of action for damages for a breach of a lifetime contract accrue when there is a positive and absolute refusal on the part of the person agreeing to pay to perform his promise to pay *and* the other party elects to treat the contract as breached. In this case we do not see that the actions and conduct of Mrs. Dickson Falvey after Dr. Falvey's breach of the contract in 1929 show, as a matter of law, that Mrs. Dickson Falvey elected to treat the contract as breached, although she believed the contract as a matter of fact had been breached by Dr. Falvey. She could have brought suit after the breach of 1929 but was not required to do so if she did not so desire, the only penalty for such failure to sue being the loss by limitation of such claims as became more than 4 years old before suit was

brought. We believe, therefore, that Mrs. Dickson Falvey and the substituted plaintiff, appellant here, had the right to recover under the contract for all of the $350 payments which were not barred by the 4 year statute of limitation, Vernon's Ann.Civ.St. art. 5527, at the time the suit was filed, less a credit for the various $100 monthly payments received by her during such 4-year period. The judgment of the trial court denying the appellant any recovery under her alternative cause of action is therefore reversed and judgment here rendered in favor of the appellant, Sue Falvey Sims, and against the appellees, Mrs. Ruby E. Falvey and Houston Bank & Trust Company in their capacities as independent executrix and executor of the estate of Thos. S. Falvey, deceased for the sum of $13,100. This sum represents the $350 monthly payments for 4 years not barred by the 4 year statute of limitation, less the sum of $3,900 paid by $100 monthly payments to Mrs. Dickson Falvey during the 4-year period immediately before this suit was filed.

The appellant's third point complains of the action of the trial court in awarding her the sum of $1,592.48 against the executrix and executor of the estate of her father for the reason that the trial court in its judgment based such recovery upon its finding and conclusion that Dr. Falvey and Mrs. Dickson Falvey had by their actions and conduct since 1929 substituted a new agreement for the old marriage settlement agreement, and that by such agreement he agreed to pay her $100 per month instead of $350. Both appellant and appellees urge in their briefs that this portion of the judgment should be set aside and held for naught. The appellant points out that no party to the lawsuit had urged by pleading or evidence that any new agreement was ever made between Dr. Falvey and Mrs. Dickson Falvey. There is no pleading to support such portion of the judgment. The appellant has maintained throughout the trial that the old agreement was still in effect and the appellees have contended with equal insistence that the old contract had been breached, rescinded and abandoned

and that Dr. Falvey had been released from its terms, and urged that Dr. Falvey had made the $100 monthly payments as a series of gifts rather than in discharge of any contractural obligation to Mrs. Dickson Falvey. The evidence, in the form of letters from Dr. Falvey to Mrs. Dickson Falvey, and other evidence in the record, do not show any new agreement between Dr. Falvey and Mrs. Dickson Falvey, but on the other hand show what could be more accurately described as a continuing disagreement. In view of the condition of the pleadings and the evidence, and because both appellant and appellees urge that such portion of the judgment be reversed, that portion of the trial court's judgment which awarded the appellant the sum of $1,592.48 against Mrs. Ruby E. Falvey and Houston Bank & Trust Company as independent executrix and executor is reversed and rendered in favor of the appellees.

The judgment is in part affirmed and in part reversed and rendered.

On Appellant's Motion for Rehearing

Appellant's motion for rehearing deals largely with that portion of this court's original opinion in this case in which the action of the trial court in denying her any recovery under her principal cause of action was affirmed. Nothing is presented in that portion of the motion or her brief in support thereof which causes us to alter our views as stated in our original opinion.

In the latter portion of the motion, however, dealing with that portion of our opinion which awarded her a recovery in part upon her alternative cause of action, the appellant in her motion has urged some matters which require further discussion. In calculating the sum of money due and owing to the appellant, we arrived at the figure of $13,100. In her brief in support of the motion for rehearing the appellant has pointed out that the first $350 monthly payment due the appellant not barred by the four-year statute of limitations was that payment due July 5, 1944, and the last of such payments was due August 5, 1948. Her mother, Mrs. Dickson Falvey, died on August 9, 1948. Therefore at that time there were fifty $350 monthly

payments due and unpaid. This totals $17,500. The aggregate of the $100 payments made by Dr. Falvey is $4,100. The balance due defendant is $13,400, as correctly stated in appellant's motion.

The appellant also requested in her motion that we make plain her right to recovery of interest upon her judgment. While the opinion as written is not the judgment of the court, we will write into the judgment that the appellant shall recover interest on all amounts awarded to her from the date of the judgment of this court at the rate of 6 percent per annum until paid.

The appellant's right to recover interest upon the delinquent payments is not questioned and we omitted any reference thereto in the original opinion. She will also be awarded interest at the rate of 6 percent per annum on each delinquent amount of $250 from the date of each separate delinquency in payment.

■ Appellant complains in her motion of our disposition of her claim for $3,000 which she alleged was due her because of the breach of Dr. Falvey's agreement to pay the premiums on a $3,000 life insurance policy. We held that the matter was not briefed in her original brief and reply brief and therefore we considered the matter waived. In her motion for rehearing and the brief thereunder ,she points out that the matter is included by reference to her points in the brief under her alternative cause of action. We will therefore consider her claim for $3,000.

From the statement of facts it was shown on the trial that the policy in question was issued on the life of Dr. Falvey in 1904 and was canceled in 1932. It was canceled because a loan was made on the policy in 1930, the loan was never repaid and after the policy loan and interest exceeded the cash value of the policy it was canceled by the company. The breach of this agreement to keep up the payments of premiums on this policy therefore occurred in 1932, 16 years before this suit was filed. The appellant makes the statement in her brief that after Dr. Falvey's death she was damaged in the sum of $3,000 because of

his failure to make the premium payments. The appellees have urged the four-year statute of limitations as a defense to all of her claims, including this one. No argument or authority is presented anywhere by the appellant in support of her assumption that the statute of limitations began to run against this claim at the time of Dr. Falvey's death rather from the time of his breach of his agreement, which occurred in 1932. We note in the contract between Dr. Falvey and Mrs. Dickson Falvey that he agreed to pay when due all the premiums to keep in force the life insurance and to promptly deliver to Mrs. Dickson Falvey at Austin, Texas, such receipts from time to time as would show that this provision of the contract had been complied with. There is no allegation anywhere in her pleadings, and no proof in the record, that Mrs. Dickson Falvey did not know that after 1932 Dr. Falvey did not make any payments of the premiums on this policy of life insurance. Nothing is pleaded or proved which in our opinion would toll the statute of limitations and prevent its application to her claim for breach by Dr. Falvey of his agreement to pay the premiums. We think that the rule applying to this claim is stated in 54 C.J.S. Limitations of Actions, § 151, p. 94 as follows: "The right of action for breach of a continuing covenant accrues from day to day as long as the breach continues, and any claim for a breach back of the statutory period within which action may be brought is barred." We believe that the appellant has observed this as a rule of law in her action upon her alternative claim for damages for the breach of Dr. Falvey's agreement to make the monthly payments to her mother and brought her suit only for those payments not in default more than four years at the time her suit was filed. Dr. Falvey's breach of his agreement to pay the premiums occurred 16 years before the suit was filed. For these reasons we believe that appellant's claim for $3,000 is barred by the four-year statute of limitations.

■ Appellant's motion rightfully complains of our choice of language in disposing of her third point in her original brief, and

474

also rightfully complains of our disposition of such a point. The trial court held that the original agreement between Dr. Falvey and Mrs. Dickson Falvey was modified by a subsequent agreement. Both appellant and appellee were dissatisfied with such a ruling and we held that there had been no new agreement between the parties modifying the original contract, either expressly or by implication. Under such agreement, however, the trial court awarded the appellant the sum of $1,592.48, of which amount $900 was for $100 monthly payments for each of the last nine months of Mrs. Dickson Falvey's life. The balance of $692.48 was for the unpaid current premium due on the balance of the policy loaned upon the $10,000 life insurance policy involved in this suit. We now believe that the appellant should be awarded judgment for such sum of $692.48. This $10,000 life insurance policy was one of the life insurance policies which Dr. Falvey assigned in his contract with Mrs. Dickson Falvey and he kept up the premium payments until the last year of his life. The insurance company paid the face value of the policy of $10,000 to Mrs. Dickson Falvey, less a deduction of $692.48. It is shown in the statement of facts that this sum was for the current annual premium and a policy loan of $409.80 due at the time of Dr. Falvey's death.

The appellant's motion for rehearing is therefore overruled in part as follows: Judgment in her favor in her principal cause of action is denied; recovery for the $3,000 insurance money lost as a result of Dr. Falvey's default in performance of his promise to keep up premium payments in 1932 is denied. Appellant's motion for rehearing is granted in part and on her alternative cause of action she is awarded judgment for the total amount of the unpaid monthly installments aggregating $13,400, together with interest on the unpaid installments from the date of each installment's due date until the date of this judgment at the rate of 6 percent per annum; for the sum of $692.48 with interest thereon at the rate of 6 percent per annum from April 8, 1948 (the date when the $10,000 policy was paid to Mrs. Falvey

with a deduction of $692.48) to the date of this judgment. The judgment of this court shall bear interest at the rate of 6 percent from the date thereof.

In all other respects the appellant's motion for rehearing is overruled.